# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 18-392-01 |
| ARTAVIUS HORNE<br>a/k/a "Lo" | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Artavius Horne is a sexual predator with a history of selling the bodies of children for sex. A registered sex offender, Horne continued targeting and exploiting children, selling three minors for sex while on parole for sex trafficking minors. Horne trafficked these children, one of whom was only 13 years old, between 2013 and 2015, and in 2018. He is a danger to society with no regard for the law, as evidenced by his life of crime and commission of perjury under oath during trial. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of life imprisonment**.**

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a within-guideline sentence of life in this case.

I. **BACKGROUND**

On June 27, 2019, a federal grand jury sitting in the Eastern District of Pennsylvania returned a three-count indictment charging defendant Artavius Horne with three counts of sex trafficking of minors and attempt, in violation of 18 U.S.C. §§ 1591 and 1594. On September 13, 2019, after a three-day jury trial, Horne was convicted on all counts. In addition to finding Horne guilty of sex trafficking of minors, the jury also found through interrogatories that Horne knew or acted in reckless disregard of the fact that Minors 1-3 were under the age of 18 years old, and specifically that Minor 1 was under the age of 14.

II. **SENTENCING CALCULATION**

   A. **Statutory Maximum Sentence**.

The maximum sentence for a violation of 18 U.S.C. § 1591(b)(2) (sex trafficking of minors) is life imprisonment, a 10-year mandatory minimum term of imprisonment, a mandatory minimum 5 years of supervised release up to lifetime supervised release, a $ 250,0000 fine, and a $100 special assessment per count of conviction.  Where the minor trafficked was under the age of 14, the mandatory minimum term is 15 years' imprisonment.  *See* 18 U.S.C. § 1591(b)(1).  In this case, that mandatory minimum term applies to Count One in light of the special interrogatory.

 The total maximum sentence that may be imposed on the defendant is life imprisonment, 15 years' mandatory minimum imprisonment, a mandatory minimum 5 years supervised release up to a lifetime of supervised release, $ 750,000 fine, and a $300 special assessment.

If the defendant is not indigent, the defendant is also subject, under 18 U.S.C. § 3014, to an additional $5,000 special assessment for each violation of U.S.C. § 1591, for a total of $15,000.

   B. **Sentencing Guidelines Calculation**.

**Guideline Calculations**

   *Count One/Group 1 (Minor 1- "C.A.")*

The Probation office correctly calculated the offense level for Count One/Group 1 at 42 as follows: the base offense level is 34 pursuant to U.S.S.G § 2G1.3(a)(1) due to Horne's conviction of 18 U.S.C. § 1591(b)(1) as Minor 1 was 13 years old when Horne started trafficking her. Pursuant to U.S.S.G.§ 2G1.3(b)(2)(B), two levels are added as the defendant unduly influenced Minor 1 to engage in prohibited sexual conduct. Pursuant to U.S.S.G. §

2G1.3(b)(3)(B), two levels are added as the offense involved the use of a computer to offer and solicit the minor to engage in prohibited sexual conduct. Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), two levels are added as the offense involved the commission of a commercial sex act. Pursuant U.S.S.G. § 3C1.1, two levels are added as the defendant committed obstruction of justice by perjuring himself under oath during trial.

*Count Two/Group 2 (Minor 2 – "C.A.")*

The Probation office correctly calculated the offense level for Count Two/Group 2 at 38 as follows: the base offense level is 30 pursuant to U.S.S.G § 2G1.3(a)(2) due to Horne's conviction of 18 U.S.C. § 1591(b)(2). Pursuant to U.S.S.G.§ 2G1.3(b)(2)(B), two levels are added as the defendant unduly influenced Minor 2 to engage in prohibited sexual conduct. Pursuant to U.S.S.G. § 2G1.3(b)(3)(B), two levels are added as the offense involved the use of a computer to offer and solicit the minor to engage in prohibited sexual conduct. Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), two levels are added as the offense involved the commission of a commercial sex act.[1] Pursuant U.S.S.G. § 3C1.1, two levels are added as the defendant committed obstruction of justice by perjuring himself under oath during trial.

*Count Three/Group 3 (Minor 3- "K.H.")*

The Probation office correctly calculated the offense level for Count Three/Group 3 at 38 as follows: the base offense level is 30 pursuant to U.S.S.G § 2G1.3(a)(2) due to Horne's conviction of 18 U.S.C. § 1591(b)(2). Pursuant to U.S.S.G.§ 2G1.3(b)(2)(B), two levels are added as the defendant unduly influenced Minor 2 to engage in prohibited sexual conduct. Pursuant to U.S.S.G. § 2G1.3(b)(3)(B), two levels are added as the offense involved the use of a

---

1 U.S. Probation gave Horne a two-level enhancement pursuant to USSG §2G1.3(b)(4)(B) for each of the minors; the two-level enhancement does apply, but under USSG §2G1.3(b)(4)(A).

computer to offer and solicit the minor to engage in prohibited sexual conduct. Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), two levels are added as the offense involved the commission of a commercial sex act. Pursuant U.S.S.G. § 3C1.1, two levels are added as the defendant committed obstruction of justice by perjuring himself under oath during trial.

*Multiple Count Adjustment, Combined Offense Level, Acceptance of Responsibility*

U.S. Probation correctly calculated the multiple count adjustment under U.S.S.G.§ 3D1.4 as follows:

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count 1 | 42 | 1.0 |
| Count 2 | 38 | 1.0 |
| Count 3 | 38 | 1.0 |
| Total Number of Units | | 3.0 |

The greatest adjusted offense level is 42, with an increase of 3 offense levels pursuant to U.S.S.G. § 3D1.4, making the combined adjusted offense level 45. U.S. Probation also correctly applied U.S.S.G.§ 4B1.5(a)(4), as Horne is a repeat and dangerous sex offender against minors, thereby making him a Criminal History Category V. With a Criminal History Category of V, the defendant's guideline range is life imprisonment.

**Discussion on Relevant Guideline Provisions:**

**U.S.S.G. § 2G1.3(b)(2)(B)- Undue Influence of a Minor**

U.S.S.G. § 2G1.3(b)(2)(B) provides for a two-level increase if the defendant otherwise unduly influenced a minor to engage in prohibited sexual conduct. Application note 3(B) provides in pertinent part, "in determining whether subsection (b)(2)(B) applies, the court should

closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." The application note further states, " in a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor."

As it pertains to Minors 1, 2 and 3, the enhancement applies, as Horne, aged 29 through 34 during the time of the offense, was more than 10 years older than each of the victims. During the commission of the offense. Minor 1 was trafficked from age 13 to 18, Minor 2 from age 16 to 18, and Minor 3 at age 15. Horne cannot offer any evidence to rebut the presumption that the age disparity between himself and the victims constituted undue influence over the victims, who were drug addicted runaways with no stable residence. Each victim testified she met Horne during a time when she was homeless and struggling at some level with substance abuse. After the minors met Horne, he organized and facilitated their sex trafficking, taking photos of the minors and as well as having others take photos of them, posting advertisements for their sale for sex on Backpage.com, and providing protection during the trafficking. Horne provided these homeless children a place to live in the "trap" apartments in which he trafficked them. In return, Minors 1, 2 and 3 gave Horne portions of the money from their exploitation.

Other Courts have applied this enhancement in the context of sex trafficking offenses. *See eg. United States v. Anderson*, 560 F.3d 275 (5th Cir. 2009) (finding undue influence enhancement appropriate where defendant was at least 10 years older than minor despite fact that defendant's victims were already engaging in prostitution before they associated with him, where record established victims were afraid to leave defendant*); United States v. Patterson,* 576 F.3d

431 (7th Cir. 2009) (affirming district court's application of undue influence enhancement where 42-year-old encouraged 14-year-old runaway to prostitute for him, finding significant that victim was "destitute and penniless" when she began working for defendant and that victim had not prostituted before); *United States v. Brooks,* 610 F.3d 1186 (9th Cir. 2010) ( finding two-level sentencing enhancement was warranted where minors 10 years the defendant's junior had no money, no job, were runaways, and had nowhere to live). *See United States v. Blake*, 868 F.3d 960, 977 (11th Cir. 2017) (in determining whether a defendant used undue influence, courts may consider whether his conduct "displaye[d] an abuse of superior knowledge, influence and resources"; court affirmed enhancement where the defendant facilitated the prostitution activities by using his superior knowledge and resources to manage the prostitution ring, post ads on Backpage using his personal electronic devices, and transport the minors to their jobs). *See also United States v. Reid*, 751 F.3d 763, 768 (6th Cir. 2014) ("It makes no difference that J.H. 'was not handcuffed to a bed' or 'kidnapped off the street.' The undue-influence enhancement 'is not limited to force, fraud, or coercion.' It also reaches 'manipulating' and 'preying upon' a vulnerable victim").

It should be noted that Courts have also recognized that the fact that a minor victim was being prostituted previous to the offense does not preclude application of the enhancement. *See United States v. Hornbuckle*, 784 F.3d 549, 557 (9th Cir. 2015) (where record otherwise supports district court's factual finding of undue influence, evidence of minor victim's willingness to engage in acts of prostitution is insufficient to compel reversal); *United States v. Miller*, 601 F.3d 734, 737–38 (7th Cir. 2010) (evidence of minor victim's willingness to engage in acts of prostitution did not render finding of undue influence clearly erroneous); *United States v. Hagen*, 641 F.3d 268, 271 (8th Cir. 2011) (application of enhancement not clearly erroneous, despite

evidence that "victim traveled freely with defendant"); *United States v. Watkins*, 667 F.3d 254, 265 (2d Cir. 2012) (fact that victim actively was pursuing relationship with defendant did not compel contrary conclusion); *United States v. Lay*, 583 F.3d 436, 446 (6th Cir. 2009) (presumption of undue influence not overcome by evidence suggesting that minor initiated communications and proposed meeting with defendant).

### U.S.S.G. § 2G1.3(b)(3)(B)- Use of a Computer

U.S.S.G. § 2G1.3(b)(3)(B) provides for a two-level increase if the offense involved the use of a computer or an interactive computer service to offer or solicit a person to engage in prohibited sexual conduct with a minor. Application Note 1 to this provision defines "computer" as having the meaning given that term in 18 U.S.C. § 1030(e)(1), which states in pertinent part: the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device. Application Note 1 also defines "interactive computer service" as having the meaning given that term in 47 U.S.C. §230(f)(2), which states in pertinent part: "interactive computer service" is any information service, system, or access software provider that provides or enables computer access . . . including specifically a service or system that provides access to the internet.

Each minor victim testified at trial that Horne offered and solicited them for commercial sex by posting pictures of them in advertisements for commercial sex on the website Backpage.com via his cellular phone. As Horne used his cellphone to access the internet to post the advertisements onto Backpage.com, his cellular phone meets the definition of both a computer and an interactive computer service and the enhancement applies.

**U.S.S.G. § 2G1.3(b)(4)(A)- Commission of a Sex Act**

U.S.S.G. § 2G1.3(b)(3)(A) provides for a two-level increase if the offense involved the commission of a sex act. Each minor victim testified at trial that they engaged in multiple sex acts pursuant to Horne's advertisement of them for commercial sex. They further testified they gave Horne a portion of the proceeds from commercial sex. The enhancement applies.

**U.S.S.G. § 4B1.5(a)(1)(A)- Repeat and Dangerous Sex Offender Against Minors**

U.S.S.G. § 4B1.5(a)(1)(A) provides for an enhancement in both offense level and Criminal History Category computation if the defendant's instant offense of conviction is a covered sex crime, USSG § 4B1.1 (career offender) does not apply, and the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction. Under these circumstances, the offense level is the greater of the offense level determined under Chapters Two and Three or level 37 as the statutory maximum of the offense is life.

Sex Trafficking of minors is a covered sex crime under chapter 109A of Title 18, United States Code, chapter 110. Horne committed at least part of the instant offense subsequent to sustaining a sex offense conviction. On March 6, 2017, Horne was convicted in Bucks County, Pennsylvania, for "promoting prostitution of minors and own/control house of prostitution." Horne started trafficking Minor 1 and trafficked Minors 2 and 3 while on bail for his Bucks County case; Horne continued trafficking Minor 1 in 2018, after sustaining his 2017 conviction. While this role enhancement applies, it has no practical effect on the guideline range as Horne's Chapter Two and Three calculation is 45 (over the level 37 in USSG § 4B1.5(a)(1)(B)) and with 11 criminal history points, his Criminal History Category is V even before application of the guideline.

## III. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one within the advisory guideline range of life.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The defendant engaged in appalling conduct. Horne sold juvenile girls for sex. Horne harbored and exploited the minors in apartments he secured for years. His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the guideline sentence of life. The psychological damage to these children resulting from these offenses will be life-long and significant. They will have to endure the shame and degradation of this experience for the rest of their young lives.

Further, the defendant's history supports the need for a substantial period of incarceration. Horne has a lengthy and troubling criminal history starting from the age of 13. As a juvenile, Horne was adjudged delinquent of simple assault and two narcotics-related offenses. PSR ¶¶ 64-67. As an adult, Horne's criminal behavior continued. He was convicted of two additional narcotics trafficking offenses and violated the probationary portion of his sentences. PSR ¶¶ 68, 70. Horne then was convicted of receiving stolen property and simple assault. PSR ¶¶ 69, 71. Most significantly, Horne was convicted of promoting prostitution of minors and related charges. PSR ¶ 72. Horne committed the instant identical offense of trafficking minors while both on parole and probation for that conviction. Moreover, while detained on the instant offenses at the Federal Detention Center ("FDC"), Horne's adjustment has been abysmal, as he continues to engage in disruptive and violent acts. Horne has committed the following violations in the FDC: refusal to obey an order and being insolent to staff, possession of a dangerous homemade weapon, possession of illegal drugs, and disruptive conduct. PSR ¶ 5. Since the drafting of the PSR, Horne was once again found to be in possession of an illegal drug, Suboxone, while detained in the FDC. *See* Exhibit 1. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

In addition, adherence to the recommended guideline range is the only course for assuring that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

## IV. RESTITUTION

Title 18, United States Code, Section 1593 requires mandatory restitution to victims of sex trafficking for "the full amount of the victim's losses." Section 1593(b)(3) states that "the victim's losses" are defined by Section 2259(b)(3), and shall additionally include the value of the victim's services to the defendant or the value of the victim's labor under the Fair Labor Standard Act, whichever is greater. 18 U.S.C. § 1593(b)(3). As set forth below, the government has reviewed the statements of the victims to determine the estimated number of commercial sexual encounters engaged in by each victim daily, multiplied by the most conservative dollar amount charged per date (a dollar value set by the defendants), multiplied by amount of time the victim worked for the defendant in this case, leading to the total estimated value of victims' services that the defendant secured.

### Minor 1 C.A.

Minor 1 testified at trial and in the grand jury that she was trafficked by Horne during the

ages of 14-16 and then again at 17. She testified in the grand jury and told FBI Special Agents that Horne set the prices of commercial sex at $60 for a "short stay," $100 for a "half hour," and $150 for an "hour." She testified at trial and in the grand jury that Horne took 50 % of her proceeds from her exploitation. Minor 1 testified she engaged in commercial sex at Horne's direction 10 or more times a day, seven days a week during the timeframe she was trafficked by Horne. Taking the most conservative estimate of $300 per day (assuming 10 clients at $60 for a short stay), $300 x 7 days =$2100. Multiplying this by the three years (156 weeks) Minor 1 was trafficked = $327,600. Subtracting out the 50 % Minor 1 received during the three years she was trafficked by Horne, restitution owed to Minor 1 is **$163,800.**

Minor 2 C.A.

Minor 2 testified at trial and in the grand jury that she was trafficked by Horne during the ages of 16-17 as a minor and at age 18. She told FBI Special Agents that Horne set the prices of commercial sex at $60 for a "short stay," $100 for a "half hour," and $150 for an "hour." She testified at trial and in the grand jury that Horne took 50 % of her proceeds from her exploitation. Minor 2 testified at trial that she engaged in commercial sex at Horne's direction 10 or more times a day, seven days a week during the timeframe she was trafficked by Horne. Taking the most conservative estimate of $300 per day (assuming 10 clients at $60 for a short stay), $300 x 7 days =$2100. Multiplying this by the two years (104 weeks) Minor 2 was trafficked while a minor = $ 218,400. Subtracting out the 50 % Minor 2 received during the two years she was a minor trafficked by Horne, restitution owed to Minor 2 is **$109,200.**

Minor 3 K.H.

Minor 3 testified at trial and in the grand jury that she was trafficked by Horne for approximately 9 months during 2015. Minor 3 testified in the grand jury that she made

approximately $1000 per week "in pieces." Minor 3 also testified at trial and in the grand jury that Horne took 50% of the proceeds of her exploitation. Minor 3 testified she engaged in commercial sex at Horne's direction 10 to 15 times a day, seven days a week during the timeframe she was trafficked by Horne. Taking the most conservative estimate of $1000 per week (identified by Minor 3) and multiplying this by nine months (39 weeks) Minor 3 was trafficked = $39,000. Subtracting out the 50 % Minor 3 received during the nine months was trafficked by Horne, restitution owed to Minor 3 is **$19,500.**

Adding the conservative, and likely under-represented estimates, of earnings of the three victims together, results in the following value of victim services to the defendant:

| | | |
|---|---|---|
| Minor 1 | $163,800 | |
| Minor 2 | $109,200 | |
| Minor 3 | $19,500 | |
| TOTAL | **$292,500** | |

The government respectfully requests restitution to the victims for the value of their services, as required by statute.

### V. CONCLUSION

For these reasons, the government recommends that the Court impose a sentence within the advisory guideline range of life imprisonment.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


*/s Melanie B.Wilmoth*
MELANIE BABB WILMOTH
Assistant United States Attorney

# **CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

>Coley O. Reynolds
>Omnis Law Group, LLC
>1515 Market Street, Suite 1210
>Philadelphia, PA 19102
>cor@omnislawgroup.com

>*/s Melanie B. Wilmoth*
>MELANIE BABB WILMOTH
>Assistant United States Attorney

DATED:  August 5, 2020.